JOSEPH RICE, ADMR., v. JOHN H. BURNET ET ALS.

The maxim that fraud vitiates everything it touches extends to administrators' sales, and in such case the rule *caveat emptor* will not apply.

APPEAL from Houston. Tried below before the Hon. Leroy W. Cooper.

This suit was brought September 24, 1870, by Joseph Rice, Jr., as administrator of the estate of Joseph Rice, Sen., his father, against the appellees, on a note for $1275, executed March 3, 1868, for purchase money of two tracts of land sold at administrator's sale.

Defendants pleaded failure of consideration and alleged fraud on the part of the administrator in making the sale; and on the trial it appeared that in 1852 the land in question was owned and occupied by Clinton A. Rice and his wife Jane Rice, as a homestead. In 1857 Jane Rice brought suit for divorce, pending which W. H. Cundiff went to Clinton A. Rice, and Joseph Rice, Sen., stating that he had a claim against the land, and as they desired to deprive Jane Rice of her interest, it was agreed between them that suit should be brought in the Federal court at Tyler, and Cundiff permitted to take judgment by default, after which he would sell to R. P. Trabue, and Trabue's attorney in fact, Wm. M. Taylor, would

12

convey the land to Joseph Rice, Sen., which was accordingly done.

At the death of Joseph Rice, Sen., the administrator, considering the land as the property of Clinton A. Rice, who was still in possession, delivered to him Trabue's deed and such other evidences of title remaining in the possession of the deceased, nor was any notice taken of it either in the inventory or final distribution of the estate of Joseph Rice, Sen., between the heirs.

On the death of Clinton A. Rice, and while he lay a corpse in his house, the plaintiff's mother, Willie Rice, abstracted the title papers to the land from Clinton A. Rice's effects, delivered them to the administrator of Joseph Rice, Sen., who made an additional inventory, and afterwards sold the land, at which sale defendant, Burnet, became the purchaser.

At March term, 1872, there was verdict and judgment for the defendants, and the court overruling the motion for new trial, plaintiff appealed to the Supreme Court.

*H. W. Moore* and *Hancock & West*, for appellant.— The maxim *caveat emptor* applies to a sale by an administrator, and mere defect of title cannot avail the purchaser, either as a defense to an action for the purchase money, or as ground for rescinding the contract. (Thompson v. Munger, 15 Texas, 523; Williams v. McDonald, 13 Texas, 322; Walton v. Reager, 20 Texas, 103.)

In all sales made by an executor or administrator, he acts under the decretal order of the probate court, and the purchaser, at his own peril, is required to ascertain the grounds and authority of the fiduciary, not from the declarations at the time of the sale, but from the orders of the court. (Hamilton *et als.* v. Pleasants, 19 Texas, 638.)

When a conveyance is made in fraud of creditors, the

parties, or the heirs of the parties to a conveyance, cannot be permitted to impeach it. (Danzey *et als.* v. Smith *et als.*, 4 Texas, 411; McClenny v. Floyd, 10 Texas, 160; Fowler v. Stoneum, 11 Texas, 501 ; Lewis and Wife v. Castleman, 27 Texas, 407; Hagerty v. Harwell *et als.*, 16 Texas, 663.)

*D. A. Nunn & A. M. Jackson,* for appellees, cited the following authorities: Miller v. Jasper, 10 Texas, 514; Thompson v. Bishop, 29 Texas, 156 ; Davenport v. Hervey, 30 Texas, 329; Flanagan v. McClusty, 10 Texas, 286; Sewell v. Lowery, 16 Texas, 51; Thompson v. Thompson, 12 Texas, 329.

McADOO, J.—This case presents a vigorous and spirited contest over the application to it of two well-established rules of law and equity, and which appear to be totally irreconcilable in the case.

The appellant urges the rule of *caveat emptor* against the appellee, who purchased at an administrator's sale; while the appellee urges the rule against the appellant that "fraud vitiates everything it touches," even including sales by administrators.

Both of these rules are so well established that a reference to authorities is scarcely necessary. But how must the case stand when these two rules so present themselves in the case that one or the other must yield? Equity must furnish the answer.

He who purchases a bad title at an administrator's sale is, at the worst, only guilty of negligence. He has only purchased without due investigation of title. There is no moral turpitude in his conduct. He only purchases with his eyes open, and the rule of *caveat emptor* applies, because he took the chances without proper investigation. He is only to be regarded as a mere speculator, to win if

he buy a good title, or to lose if the title be worthless. The rule applies even perhaps if fraud were apparent on the face of the proceedings, when he had a fair chance, with proper diligence, to detect the fraud or vice in the title he buys at administrator's sale.

But, on the contrary, the rule that fraud taints and destroys every act done—that no man shall be permitted, in a court of justice, to enforce an iniquitous and fraudulent contract, or to profit by acts of fraud, is based on a higher equity. The element of moral turpitude enters into it; it is repugnant alike to the common moral sense of all men, and to the sense of common justice of all courts. It finds no tolerance whatever in a court of equity. Weighed in the balance against mere negligence, the turning of the beam is not doubtful.

This case turned in the court below, evidently, on the equitable rule last mentioned. And it is urged by the appellant's counsel, that there is nothing in the facts of this case to vary the rule as to purchasers at judicial sales; and we are cited to the case of Hamilton v. Pleasants, 31 Texas, 638, in which it is said: "In all sales made by an executor or an administrator, he acts under the decretal order of the probate court; and the purchaser, at his own peril, is required to ascertain the grounds and authority of the fiduciary, not from his declarations at the time of the sale, but from the orders of the court and the statutes of the State in regard to his special duties in the premises. The administrator could make no terms with the purchasers at such sales, which the orders of the court or the laws of the land did not warrant. Of the nature of such orders, and of the provisions of the law, the purchaser had the same means of knowing and understanding as the administrator."

The sale in the case above quoted from was made for Confederate money. The reasoning in that case is clear.

The purchaser did have all the means of knowing and understanding that the administrator had.   In other words, it is a case brought clearly within the rule of *caveat emptor*.   There was no fraud practiced, and none intended.   The purchaser speculated on his chances, with all the facts fully before him on which his rights rested. It was a venture ; he knew it to be a venture; he made it and lost.   He was entitled to no equitable relief.

But does that case stand on the same footing as this ? Can any reasonable mind reach the conclusion that the land in controversy was in fact the property of the estate of Joseph Rice, the appellant's intestate ?   Did not the appellant know the land did not, in fact, belong to the estate he was administering ?   His whole conduct shows that he knew the facts.   He did not inventory the land until he had well nigh administered the whole estate ; and yet the deed from Trabue to Joseph Rice was on record.

The testimony of Cundiff, one of the chief actors in the transaction, bears testimony in the fullest measure to the frauds.

A fraud was in the first instance committed in order to give jurisdiction to the Federal court.   The arrangement was made in advance by Joseph Rice, Clinton A. Rice and Cundiff, that the suit should go by default; that the deed was to be made to Joseph Rice without his paying any consideration therefor, and all for the express purpose of defrauding the wife of C. A. Rice of her community rights in a suit then pending for a divorce.   This was the purpose, and those were the acts intended to effect the end.

These fraudulent intentions and acts stand out in bold relief in the testimony in this cause.   These fraudulent intentions and acts were unknown to the appellee, and he had no means of knowing them.   He did not stand in a position to know them equally with the appellant.   These

transactions were secret and private, and he was not in privity with the actors in them.

The appellee has, at a cost of one hundred and fifty dollars, endeavored to acquire lawful possession of the land, and to no purpose.

We can find no better words in which to close this opinion than those which close the brief of the counsel of the appellees: "A more righteous judgment never emanated from a judicial tribunal than this one. The cases cited (Walton v. Reager, 20 Texas, 103; Crayton v. Menger, 9 Texas, 291) fully sustain it in a legal sense, though the principles maintained in those cases are far more applicable, and should be regarded as far more imperative, in this case than in them or any other reported case. Good faith and common honesty uphold the judgment, and to apply the rule of *caveat emptor* in such a case would be to pervert equitable principles to iniquitous ends."

The judgment of the District Court is affirmed.

AFFIRMED.